[No. 14312.  Department One.  February 2, 1918.]

LOUIS H. MIELKE *et al., Appellants,* v. AUGUSTA MILLER, *Respondent.*[1]

QUIETING TITLE—EVIDENCE — SUFFICIENCY.  In an action to quiet title to land under the claim that the initial payment was made by plaintiff's parents under an agreement that, on its repayment, the land was to be given to the son, findings for the defendant are sustained, where the testimony as to such repayment and the making of subsequent payments was uncertain and unsatisfactory.

ADVERSE POSSESSION—HOSTILE POSSESSION.  A suit to quiet title to land by virtue of adverse possession cannot prevail against a defendant claiming only a remainder, with right of possession in abeyance, plaintiffs being in possession with the consent of the holder of a life estate.

APPEAL—REVIEW—MATTERS NOT RAISED BELOW.  Where an action to quiet title was tried out on the theory of title by virtue of adverse possession, the plaintiff cannot, for the first time on appeal, advance the theory of ownership by virtue of a resulting trust.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered February 28, 1917, upon findings in favor of the defendant, in an action to quiet title, tried to the court.  Affirmed.

*Jno. I. Melville,* for appellants.

*Samuel P. Weaver,* for respondent.

WEBSTER, J.—This action was brought by appellants to quiet their title, as against defendants Augusta Miller and Jacob Miller, her husband, to the west half of section 9, township 22, north, range 38 east W. M.  The complaint, which was filed on March 3, 1916, alleged that, for more than ten years next preceding the commencement of the action, plaintiffs, as a community, have been, and now are, the owners in fee, and in open, exclusive, notorious and uninterrupted possession of the premises; that the defendants, Augusta Miller and

[1]Reported in 170 Pac. 143.

Jacob Miller, her husband, have, or claim to have, some right, title or interest in or to the said lands and premises adverse to plaintiffs' title therein, but that the pretended claim of the defendants is wrongful and unfounded, both in law and equity, and is a cloud upon plaintiffs' title to said lands. The prayer followed the usual form of actions to quiet title to the premises in question. By the answer, the defendant Augusta Miller put in issue the allegations of ownership made by the plaintiffs, and, by way of affirmative defense and cross-complaint, pleaded the ownership of an undivided 1-16 interest in the premises by devise, subject to a life estate therein in Michael Mielke, the father of the plaintiff Louis .H. Mielke and defendant Augusta Miller. The reply put in issue the allegations of ownership contained in the cross-complaint. During the trial of the cause, by consent of the parties, defendant Jacob Miller was dismissed from the action, he having disclaimed any interest in the premises.

After a trial upon these issues, the court made finding and decree in favor of the defendant, dismissing plaintiffs' action, and adjudging Augusta Miller to be the owner of a 1-16 interest in the premises, subject to a life estate of Michael Mielke therein, exclusive of the improvements placed thereon by plaintiffs, after deducting the interest of plaintiffs by virtue of the payment by them of the sum of $1,300 on the purchase price of said lands. The plaintiffs have appealed.

The essential facts found by the trial court, and those sustained by the preponderance of the evidence, are these: For many years prior to the year 1901, Michael Mielke and Karoliene Minni Mielke were husband and wife, owning as a community, real and personal property in Lincoln county, Washington, which relationship continued until August 18, 1904, when the wife died testate. By her will, which was duly ad--

mitted to probate, she devised a life estate in all her property to her surviving husband, with remainder in equal shares to her seven children and one grandchild; the appellant Louis H. Mielke and the respondent Augusta Miller being two of the children and devisees of the deceased. On May 13, 1901, the community composed of the father and mother, by a certain contract in writing, purchased of the Vermont Loan and Trust Company the property described in the complaint, paying therefor in cash the sum of $750, and agreeing to pay in annual installments the remainder of the purchase price amounting to $3,450, with interest as therein provided. During the lifetime of Karoliene Minni Mielke, regular payments of principal and interest were made upon the contract, which was taken in the name of M. Mielke for the benefit of the community, so that the contract was in full force and effect at the time of her death on August 18, 1904. The final payment of $1,300 was made on March 13, 1905, by appellants, at which time they received a deed conveying to them the premises described in the above mentioned contract of purchase. In the fall of 1901, appellant Louis Mielke moved upon the land, and in the year 1903, he married appellant Freda Mielke, since which time both appellants have continuously resided thereon.

The will of Karoliene Minni Mielke named her surviving husband, Michael Mielke, as the executor thereof. In the inventory and appraisement filed by him, the property described in the contract of purchase was listed as an asset of the estate, and on December 19, 1904, the interest of the estate therein was valued by the appraisers at $1,400. Thereafter, and on November 6, 1911, said executor filed in the probate proceedings his petition for an order of solvency of the estate of his deceased wife, wherein he alleged that the inventory theretofore made was true and correct; that

said real estate was the community property of deceased and the petitioner; that the appraised value thereof was the full market value, and that all of the indebtedness of said estate had been paid, except two mortgages which were liens upon the realty or some part thereof. A hearing was had on the petition, and on November 6, 1911, the court in said probate proceeding adjudged the estate of Karoliene Minni Mielke solvent.

There is testimony in the record tending to show that this land was purchased with the intention that it should become the property of the appellant Louis H. Mielke; that the initial payment was advanced by the parent community with the understanding that, when the money was repaid, the property would be given to the son—a claim which receives some support in the circumstance that the deed was subsequently executed and delivered to the appellants, and the further fact that all of the devisees except respondent have quitclaimed their interest in the land to appellants; that all payments, except the initial payment, including interest and taxes, were made by appellant, and that improvements in excess of the value of $5,000 were placed on the land by appellants. However, much of the testimony in this respect is unsatisfactory. The son's statement as to the repayment of the purchase money is not supported by any receipt, voucher or written memoranda, nor is any specific date given when such payment was made, neither was his wife called to verify the assertion, although they were married and living upon the premises more than a year before the mother's death, and it is not contended that the purchase money was repaid until subsequent to the happening of that event.

It seems unreasonable that the sum of $750 could have been paid by appellant Louis Mielke from the

community earnings without the knowledge of his wife; manifestly so, in view of the fact that needed improvements and equipment must necessarily have called forth their utmost thrift and industry. The testimony of the father to the effect that the purchase money was repaid after the mother's death is uncertain as to time, manner and circumstance; likewise his further testimony that all subsequent payments on the contract of purchase were made by the appellant, and that it was the intention of himself and the deceased that the land should belong to his son when the purchase money was repaid. Moreover, the parent's testimony in this respect is positively negatived by his sworn statements in the inventory and petition to probate the will, made shortly after his wife's death, and in the petition on which the order of solvency was predicated in the probate proceeding in the month of November, 1911, more than six years after the final payment on the contract of purchase had been made and the deed taken in the name of appellants. The records of the Vermont Loan and Trust Company show that all payments on the purchase price were made by the father, with the exception of the last payment of $1,300, which was made after the mother's death, also the receipts for such payments, brought here as exhibits in the case, support the records of the vendor in that respect.

At the time the cause was tried, the father was advanced in years, uncertain of memory, and the greater part of his evidence was given through the aid of an interpreter. We are not disposed to reflect upon the multitude of inconsistencies that characterize his testimony, or to censure his course of conduct, other than to say that, under the circumstances disclosed by the record, the trial court did not abuse its discretion in refusing the findings requested by appellants based

upon the testimony to which reference has been made; neither are we able to conclude that the findings made and the decree based thereon dismissing plaintiffs' action and awarding the respondent a 1/16 interest in the land, exclusive of the improvements, subject to appellants' claim in the sum of $1,300 paid upon the purchase price thereof, are not supported by the greater convincing weight of the evidence contained in the record.

Appellants' suit was brought to quiet their title by virtue of their adverse possession for the period of more than ten years prior to the commencement of the action. Such claim cannot prevail as against the interest of respondent, whose estate and right of possession must remain in abeyance during the lifetime of the surviving husband of the deceased testatrix.

But it is urged by appellants that the contract of purchase and the oral agreement between the parents and their son constituted a resulting trust which should be established in his favor upon proof of the repayment of the purchase money advanced by the community estate of the deceased and M. Mielke. It seems this question is first raised by appellants in the opening brief on this appeal. The cause was tried in the lower court upon appellants' theory of ownership by adverse possession. No issue of a resulting trust in plaintiffs' favor was tendered or considered in the trial below. Causes should be tried upon the issues presented by the pleadings. Counsel should know, or ascertain in advance of the trial, the relief which the known facts will justify, and try the case in accordance with the rules of established procedure. The practice of initiating in this court the trial of issues for the benefit of unsuccessful litigants will not be tolerated.

Finding no claim of error that merits a further discussion, and being satisfied that, under the circum-

stances disclosed by the record, the trial court's decision was correct, the judgment is affirmed.

ELLIS, C. J., FULLERTON, PARKER, and MAIN, JJ., concur.